# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

|  |  |
|---|---|
| STATE COMPENSATION INSURANCE FUND, a Public Enterprise Fund and Independent Agency of the State of California,<br><br>Plaintiff,<br><br>v.<br><br>SANA ULLAH KHAN, an individual, et al.,<br><br>Defendants. | Case No.: SACV 12-01072-CJC(JCGx)<br><br>ORDER GRANTING IN PART AND DENYING IN PART THE ZAKS DEFENDANTS' MOTION FOR ATTORNEYS' FEES |

## I.  INTRODUCTION & BACKGROUND

Plaintiff State Compensation Insurance Fund (State Fund) brought this action for violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO)

statute, 18 U.S.C. § 1962(c), and conspiracy to commit RICO, 18 U.S.C. § 1962(d), against defendants Alexander Zaks, M.D., Sana Khan, M.D., David Holmes, D.C., and Daniel Reyes, D.C.; their various companies; and State Fund's own former employee, attorney Bruce Roth.  State Fund also asserted a claim for fraud against Dr. Zaks and the Zaks Entities.[1]  A previous order of this Court granted all Defendants summary judgment on all claims.  (Dkt. 376.)

The Zaks Defendants have now filed a motion seeking recovery of their attorneys' fees and non-statutory litigation costs, based on a fee-shifting clause in settlement agreements (the "Settlement Agreements") entered into by the Zaks Entities and State Fund.  (Dkt. 385.)  The Zaks Defendants seek a total of $4,433,495.44 in fees, $1,149,772.56 in out-of-pocket costs, and $56,035.61 in copying costs, all incurred before March 31, 2016.  They also seek leave to file a supplemental declaration listing the attorneys' fees and costs they incurred in connection with filing their fees motion.

State Fund opposes the awarding of fees for all work done on behalf of Mr. Zaks and the other individual Zaks Defendants, but acknowledges that the Zaks Entities are entitled to some attorneys' fees under the Settlement Agreements.  In support of its position, it has filed the declaration of an attorney it offers as a fees expert, Gerald G. Knapton.  (Dkt. 399-9.)  Knapton argues that the Zaks Entities' fees must be deeply discounted due to duplicative billing, vague time entries, billing for administrative work, and a number of other reasons.

---

[1] The Zaks Entities are comprised of defendants Accident Help Line Medical Group, Inc.; Alexander Zaks, M.D., Inc.; Alta Surgery Center Medical Clinic, Inc.; Technical Surgery Support Medical Clinic Services, Inc.; Reliable Medical Supply, LLC; Valley Interpreting Services, LLC; and Comprehensive Outpatient Surgery Center, LLC.  Drs. Zaks, Holmes, and Reyes, together with the Zaks Entities, will be referred to as the Zaks Defendants throughout.

In response, the Zaks Defendants have filed the declaration of attorney Richard M. Pearl, who likewise represents himself as a fees expert.  (Dkt. 402.)  After thoroughly reviewing the materials submitted by Knapton, as well as the parties' briefing and evidence in support of their respective positions, the Court is unconvinced that the substantial reductions Knapton seeks are appropriate.

The Court GRANTS IN PART and DENIES IN PART the Zaks Defendants' motion for attorneys' fees and non-statutory costs.  With the exception of one error conceded by the Zaks Defendants, the Court grants the Zaks Defendants' motion with respect to the attorneys' fees.  The Zaks Defendants are hereby awarded $4,391,277.94 in fees.[2]  The Court will not, however, award the Zaks Defendants the $1,149,772.56 in assorted non-statutory costs or the $56,035.61 in copying costs that they also seek to recover here.

## II.  ANALYSIS

### A.  The Terms of the Settlement Agreements

The Settlement Agreements provide the substantive basis for the Zaks Defendants' request for attorneys' fees.  They are governed by California law, (Dkt. 385-2, Opening Br. Ex. 1, Settlement Agreements, at § IX(d)), which expressly authorizes parties to recover attorneys' fees made recoverable by contract.  Cal. Civ. Proc. Code § 1021.  The Settlement Agreements each contain an identical paragraph providing that the prevailing party in any proceeding to enforce the terms of the agreement shall be entitled to its reasonable attorneys' fees.  The paragraph reads:

---

[2] $4,433,495.44 in fees originally sought by the Zaks Defendants, (Dkt. 385, Opening Br. at 23), minus $42,217.50 in fees that the Zaks Defendants acknowledge were erroneously billed.  (Dkt. 401, Reply Br. at 13 n.10.)

Enforcement.  In the event either party is required to bring a proceeding to enforce the terms of this Agreement, the prevailing party in such proceeding shall be entitled to its reasonable attorneys' fees.

(Dkt. 385-2, Zaks Ex. 1, April 26, 2010 Settlement Agreements, at § IX (n).)  The attorney who represented the Zaks Defendants with respect to the drafting of the Settlement Agreements represents that the original draft agreement contained no attorneys' fees provision, but he "insisted on the inclusion of an attorneys' fees provision in an attempt to ensure that [his] clients would not face a 'repeat performance' of [State Fund's] prior repudiation of the Original Settlement Memorandum.  [State Fund] agreed to include such a provision."  (Dkt. 386-14, Silverman Decl. ¶ 17.)

Having won summary judgment on each of State Fund's claims on the basis of the enforceability of the Settlement Agreements, the Zaks Defendants were the "prevailing party" in this action.  This case also involved a "proceeding to enforce the terms" of the Settlement Agreements: the Zaks Defendants' defense hinged on the argument that State Fund had released the fraud claims against them in the Settlement Agreements, and that those agreements were enforceable.  State Fund acknowledges that the Zaks Entities are entitled to recover under the terms of the Settlement Agreements, but it argues that Dr. Zaks himself cannot do so.  State Fund further argues that the Zaks Entities may only recover those fees related to State Fund's fraud claim seeking rescission of the contract, not for the RICO claims or the fraud claim seeking damages against Dr. Zaks personally. For the reasons stated below, neither of these arguments is convincing.

## 1.  Whether Dr. Zaks May Recover under the Agreements

State Fund argues that though the enforcement provision in the Settlement Agreements entitles the signatories to those agreements, the Zaks Entities, to recover at

least a portion of their attorneys' fees, Dr. Zaks himself cannot recover any attorneys' fees because he was not a party to the Settlement Agreements. But even assuming that Dr. Zaks could not recover under the Settlement Agreements based on his role as a third-party beneficiary to those agreements, and was therefore not entitled to fees spent on his personal defense, this would not create a valid basis to lower the total amount of attorneys' fees awarded: there does not appear to be any issue in this case that concerns Dr. Zaks personally but not the Zaks Entities on whose behalf Dr. Zaks signed the Settlement Agreements.

The three claims in this case—for RICO, conspiracy to commit RICO, and fraud—were all pled against all Zaks Defendants (both the individuals and the Zaks Entities). And within those claims, no allegations are made against Dr. Zaks himself that would not also be central to the claims against the Zaks Entities. State Fund has failed to identify any such issues in its briefing. And the Zaks Defendants' counsel represents that "the work on this case was done collectively, on behalf of all Zaks Defendants, and in furtherance of their collective interests. In fact, given the allegations, I am not aware of any issue that was unique to any one of the individual Zaks defendants." (Dkt. 403, Murphy Decl. ¶¶ 51.)

The fact that Dr. Zaks personally advanced the funds used to defend the Zaks Entities has no bearing on the issue, as the recovery of attorneys' fees is not limited to the amount of fees the party entitled to the fees pays on its own behalf. *See Syers Properties III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 701 (2014). It is commonplace for other people, such as family members or litigation funders, to advance the funds necessary for a party's defense. But regardless of whether the attorneys' fees were advanced by another person or entity, the party to the litigation retains the right to seek the full reasonable attorneys' fees spent on its behalf in the litigation from the opposing party

when there is a legal basis to do so.  *See, e.g., Genuine Parts Co. v. Autoparts Int'l, Inc.*,
No 200502259, 2010 WL 2764711, at *3 (Mass. Super. May 13, 2010).

Even if Dr. Zaks himself is not entitled to recoup attorneys' fees under the
Settlement Agreements, State Fund has acknowledged that the Zaks Entities are.  And
State Fund has not provided any reason to believe that the Zaks Defendants would have
spent any less on their defense had Dr. Zaks not been named as a defendant in the
complaint.  Accordingly, the fact that Dr. Zaks is not a party to the Settlement
Agreements provides no basis for discounting the fee award here.

### 2.  Recovery Related to State Fund's Tort Claims and Affirmative Defenses

State Fund also argues that the Zaks Defendants are not entitled to recover fees
relating to their defense of State Fund's RICO claims because the fee-shifting clause at
issue here does not allow them to recover fees for non-contract claims.  California courts
have, however, determined that affirmative defenses to non-contract claims can be
covered by an attorneys' fees clause, as long as the language of the clause allows for the
recovery of the fees at issue.  *See Windsor Pac. LLC v. Samwood Co.*, 213 Cal. App. 4th
263, 273 (2013); *see also* Cal. Civ. Proc. Code § 1021 (authorizing parties to collect
attorneys' fees made recoverable by contract).  The reach of a given fees clause is simply
a matter of contractual interpretation.  *Windsor*, 213 Cal. App. 4th at 273.  In *Windsor*,
the Court held that an attorneys' fee provision can either be limited to "an action on the
contract" or, "if worded more broadly, can provide for a fee award in any litigation
between the parties."  *Id.*  That court further held that a clause allowing fees to the
prevailing party "[i]n any action or proceeding to enforce or interpret the provisions of
this Agreement" was sufficiently broad "to encompass the entire action or proceeding,
including both the complaint and any responsive pleading, such as an answer."  *Id.* at

274-77. This fee-shifting language at issue in *Windsor* is comparable to the language at issue in the instant case. The Settlement Agreements provide that attorneys' fees will be awarded "[i]n the event either party is required to bring a proceeding to enforce the terms of this Agreement."

State Fund attempts to distinguish *Windsor* from the instant case by arguing that the fee shifting provision here only encompasses proceedings to "enforce the terms" of the agreement, whereas the clause at issue in *Windsor* allowed fee shifting in any action or proceeding to "enforce or *interpret*" the provisions of that agreement. (State Fund Opp'n at 10 (quoting *Windsor*, 213 Cal. App. 4th at 268 n.1) (emphasis added).) Though *Windsor* concludes that fees were recoverable in that case because its affirmative defense was "an action to interpret" the agreement at issue, *see Windsor*, 213 Cal. App. 4th at 276, that court provided no indication that the asserted affirmative defense was not also "an action to enforce" the underlying contract. And here, the Zaks Defendants' defense that State Fund's claims were barred by the releases contained in the Settlement Agreements was an effort to "enforce" the terms of that contract by any reasonable definition of the word: this Court enforced the terms of the Settlement Agreements (i.e. the releases) when it granted the Zaks Defendants' motion for summary judgment on all claims.

State Fund also relies on two earlier cases that were rejected by the *Windsor* court. The first, *Exxess Electronixx v. Heger Realty Corp.*, narrowly defines the terms "action" and "proceeding" in a fee shifting clause to exclude the assertion of an affirmative defense. 64 Cal. App. 4th 698, 712 n.15 (1998). The second case, *Gil v. Mansano*, similarly concludes that asserting a "defense" of release was not "bringing an action" because "the language 'brings an action to enforce a contract' is quite narrow." *Gil v. Mansano*, 121 Cal. App. 4th 739, 744 (2004).

*Windsor* notes that the fee clause at issue there was distinguishable from *Gil* and *Exxess* because those opinions "seemed to regard the word 'brings' or 'brought' as narrowing the scope of the attorney fee clause," and those words were absent from the *Windsor* contract. *Windsor*, 213 Cal. App. 4th at 276. This provides no help to the Zaks Defendants here, as the Settlement Agreements' fee shifting provision takes effect when a party is required to "bring a proceeding." But *Windsor* continues by stating:

> More importantly, however, we believe that the analysis in Justice Armstrong's dissent in *Gil* is correct. To the extent that either *Exxess* or *Gil* suggests, or can be read to support the proposition, that the word "action" does not encompass a defense, we disagree. As did Justice Armstrong in his dissenting opinion in *Gil*, we regard the word "action" in this context as encompassing the entire judicial proceeding, *including any defenses asserted*.

*Id.* This Court finds the *Windsor* Court and the *Gil* dissent to be persuasive. Though they focus on the word "action" whereas the operative word in the clause in the Settlement Agreements is "proceeding," the word "proceeding" covers a range of events that are at least coextensive with—and probably broader than—the range of events described as "actions" in *Windsor*. *Windsor*'s equation "in this context" of "action" with "the entire judicial proceeding" makes that point clear. *Id.*; *see also Black's Law Dict.* (10th ed. 2014) (defining "proceeding" to include "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" and "[a]n act or step that is part of a larger action").

State Fund also argues that attorneys' fees related to the defense of the tort claims are not recoverable here because when an attorneys' fee clause is "narrowly drawn" to "enforce any . . . provision . . . of [the contract]," the fee clause does not extend to tort

claims.  *See Santisas v. Goodin*, 17 Cal. 4th 599, 622 n.9 (1998); *Xuereb v. Marcus & Millichap, Inc.* 3 Cal. App. 4th 1338, 1342-43 (1992).  But, contrary to State Fund's position, courts have consistently determined that "using a contract provision as a defense to tort litigation is akin to enforcing the contract's terms."  *In re Mac-Go*, No. 14-44181 CN, 2015 WL 1372717, at *5-6. (Bankr. N.D. Cal. March 20, 2015) (discussing *Wagner v. Benson*, 101 Cal. App. 3d 27 (1980)); *Siligo v. Castellucci*, 21 Cal. App. 4th 873 (1994); *Finalco, Inc. v. Roosevelt*, 235 Cal. App. 3d 1301 (1991)).

State Fund asserts that the holdings in *Wagner, Siligo*, and *Finalco* only apply where a party necessarily and successfully defends against a tort claim in order to prevail on its contract claim.  But even assuming State Fund's narrow reading of those cases is correct, the Zaks Defendants clearly were required to refute State Fund's allegations of fraud in order to enforce the releases in the Settlement Agreements.  State Fund now argues that it is possible to conceptually separate the allegations of fraud that predate the Settlement Agreements from the fraud allegations concerning entry into the Settlement Agreements themselves, and then simply award fees for the latter but not the former.  It has, however, consistently undermined this newfound position at various points throughout the litigation.

First, State Fund repeatedly argued that the alleged wrongdoing underlying all of its claims arose from one fraudulent scheme and that the issues related to the scheme were "inextricably intertwined."  Over the course of this litigation, State Fund has represented to the Court that its allegations of fraud were based on all of the "charging allegations of the Complaint, which concern conduct that began approximately 11 years ago and is continuing to the present," (Dkt. 80 at 5-6); that "Defendants' medical provider fraud, on the one hand, and the fraud committed to obtain payment on their claims [through the Settlement Agreements], on the other, are inextricably intertwined and cannot be tried separately," (Dkt. 118 at 2); and that phasing of discovery "would be

both unfair and inefficient because discovery related to State Fund's fraud and RICO claims are inextricably intertwined with the issues selected for early discovery by the defendants."  (Dkt. 124 at 7-8.)

The Zaks Defendants repeatedly requested that the case be bifurcated so that the enforceability of the Settlement Agreements could be efficiently litigated without the parties incurring attorneys' fees on other issues.  (Dkt. 385-6, Murphy Decl. ¶¶ 23-27.) State Fund refused to do so, arguing that the issues were all "inextricably intertwined," and convinced the Court to allow fact and expert discovery to proceed on all issues simultaneously.  (Dkt. 118 at 2; Dkt. 123.)  Having prevailed on that issue, State Fund is now trying to reverse course to avoid the consequences of the Court's decision in its favor.  But State Fund asserted a single course of conspiratorial conduct encompassing both the alleged medical and billing fraud and fraud related to the entry to the Settlement Agreements.  And based on these representations, State Fund then prevailed against the Zaks defendants' motion to bifurcate by arguing that these issues were inextricably intertwined.  Given the broad scope of State Fund's claims and the Court's denial of the Zaks Defendants' motion to bifurcate, State Fund's RICO and fraud claims should not be apportioned at this time.  *See Synapsis, LLC v. Evergreen Data Sys., Inc.*, No C 05-01524 JF (RS) 2006 WL 3302432, at *4 (N.D. Cal. Nov. 14, 2006) (fees should not be apportioned where defenses against covered and uncovered claims share "common issues of fact and law" and are "inextricably intertwined").[3]

---

[3] In a related argument, State Fund claims that the Zaks Defendants should not be permitted to recoup attorneys' fees incurred from the time State Fund filed its complaint on July 2, 2012 through February 1, 2013, the date that State Fund filed its Third Amended Complaint, the first complaint to assert the claim to rescind the Settlement Agreements.  (Opp'n at 11.)  This argument is a nonstarter.  Even without that claim being asserted, the heart of the Zaks Defendants defense to *all* claims was the release contained in the Settlement Agreements.  It is therefore inconsequential whether or not State Fund had asserted its rescission claim in the initial complaint—the Zaks Defendants were asserting the contracts as a defense in any case.

## B.  The Reasonableness of the Requested Attorneys' Fees

### 1.  The Legal Standard

This Court has "broad authority" to determine the amount of a reasonable attorneys' fee.  *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000), as modified (June 2, 2000).  While the Court may rely on evidence of reasonableness submitted by the moving party, the Court also may rely on its own general knowledge and experience, as well as its experience with the particular matter, to determine a reasonable fee.  *See Syers Properties III, Inc.*, 226 Cal. App. 4th at 700 (trial court can decide whether time expended reasonable given experience presiding over matter); *PLCM Grp.*, 22 Cal. 4th 1096 (trial court entitled to rely on familiarity with quality of legal services performed and amount of time devoted to case); *Hancock Labs., Inc. v. Admiral Ins. Co.*, 777 F.2d 520, 526 n.12 (9th Cir. 1985) ("Judges may rely on their own knowledge and experience to know reasonable attorneys' fees.").

When calculating an attorneys' fees award, the Court begins with the "lodestar" method, in which the Court multiplies the number of hours reasonably expended by a reasonable hourly rate.  *PLCM Grp.*, 22 Cal. 4th at 1095.  In evaluating the number of hours reasonably expended, "California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent." *Syers*, 226 Cal. App. 4th at 698 (citing cases).

A reasonable hourly rate is determined by considering the prevailing rate for similar work (i.e., equally difficult or complex types of litigation) in the community where the court is located.  *Syers*, 226 Cal. App. 4th at 700-01.  The "reasonable hourly rate" standard "applies regardless of whether the attorneys claiming fees charge nothing

for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel." *Id.* at 698; *see also Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1172 (2005) (district court properly awarded prevailing plaintiff more than amount owed attorney under contingency agreement; plaintiff entitled to reasonable attorneys' fees, which were not limited to fees actually incurred).

### 2.  The Zaks Defendants' Staffing of the Case

The Zaks Defendants employed three firms to defend them in this matter.  The Murphy Rosen firm handled all of the written discovery and document discovery, a substantial majority of the deposition and expert work, and most of the motion practice. (Dkt. 385-6, Murphy Decl. ¶¶ 8-9.)  Murphy Rosen is a small firm with relatively low hourly rates.  The Zaks Defendants explain that by using the Murphy Rosen firm to handle the day-to-day litigation work, they were able to keep costs down.  (*Id.* ¶¶ 8-9, 12.)

The Zaks Defendants were also represented by Stephen Silverman of Silverman & Milligan.  They explain that because Mr. Silverman was the principal negotiator of the Settlement Agreements and was the Zaks Defendants' lead counsel in the underlying arbitration and WCAB litigation, his involvement in this litigation promoted efficiency by ensuring prompt and accurate access to information.  (Murphy Decl. ¶ 7.)

Given the extensive damages exposure in this case and the quality of State Fund's counsel, the Zaks Defendants opted to bring in trial counsel.  They therefore engaged Bartlit Beck, whose lead attorney in this matter has experience trying cases of this size.

The Zaks Defendants explain that they avoided duplication of effort by assigning different tasks to each firm based on the firms' respective strengths and the skills of the individual lawyers at each firm.  (Murphy Decl. ¶¶ 6-16.)  They assert that by doing so, counsel's collective work was efficient, cost-effective, and appropriate for the matter. (*Id.*)

### a.  Murphy Rosen LLP Billing Rates

As explained in detail in the Murphy Declaration, Murphy Rosen lawyers charged hourly rates ranging from $250 to $475 per hour, and did not charge for the time worked by legal assistants.  Knapton, State Fund's hired expert, concedes that these hourly rates are reasonable.  (Dkt. 399-9, Knapton Decl. ¶ 27.)

Murphy Rosen also retained Pangea3, an overseas company that provides attorneys for document review.  (Murphy Decl. ¶¶ 45-46.)  Pangea3's billing totaled $78,408.20, which reflects an hourly rate of $26.16, (Id.), a cost savings over using Murphy Rosen attorneys to do the same tasks.  Though Knapton argues that Pangea3's services are analogous to costs and are therefore not recoverable as attorneys' fees, he provides no support for the conclusion that payment to contract attorneys constitutes a cost rather than attorneys' fees.  Courts routinely award attorneys' fees for paralegals and case assistants who perform necessary work under the direction of attorneys.  *See, e.g., Synapsis*, 2006 WL 3302432, at *5; *El Dorado Irrigation Dist. v. Traylor Bros.*, No. CIV. S-03-949 LKK/GGH, 2007 WL 512428, at *7 (E.D. Cal. Feb. 12, 2007).  There does not appear to be a principled reason to not do the same in this case with respect to these contract attorneys.  Accordingly, the Court will not deduct the fees paid to Pangea3 from the attorneys' fees sought by the Zaks Defendants in their motion.

//

//

### b.  Silverman and Milligan LLP Billing Rate

Mr. Silverman has been practicing law for over 49 years and has a wide range of experience.  In connection with this matter, he charged his standard rate of $595 per hour. Knapton acknowledges that Silverman's hourly rate and the hourly rates of the other attorneys at his firm are reasonable.  (Knapton Decl. ¶ 25.)

### c.  Bartlit Beck Herman Palenchar & Scott LLP Billing Rates

Lead Bartlit Beck attorney Glen Summers's Declaration indicates that though Bartlit Beck believes in the use of alternative fees and insists on non-hourly fee arrangements whenever possible, the firm maintains hourly rates for its lawyers and other billable employees.  (Dkt. 386, Summers Decl. ¶ 37.)  During the relevant time period, the hourly rates for the attorneys assigned to this matter ranged from $560 to $890 per hour, with Summers at the high end of the range.  (*Id.*)  The Zaks Defendants note that these rates are consonant with the rates of comparable firms, and that the National Law Journal's 2014 billing survey shows that the average hourly rate for Irell & Manella partners was $890 and that rates for some of the partners were as high as $975 per hour. (*Id.* ¶ 39.)  Irell & Manella also charged as much as $750 per hour for associates and the average hourly rate for an associate was $535.  (*Id.*)  Notably, Irell & Manella formerly represented State Fund in a comparable matter.  (*Id.*)

Knapton argues that Bartlit Beck's hourly rates should be substantially reduced because they are higher than the Real Rate Report and the USAO Attorney's Fees Matrix (formerly known as the *Laffey* Matrix).  (Knapton Decl. ¶¶ 32-33.)  California courts have, however, repeatedly declined to follow the *Laffey* Matrix.  *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("just because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for

determining rates elsewhere, let alone in a legal market 3,000 miles away"); (Pearl Decl. ¶ 27).  Pearl, the Zaks Defendants' fee expert, also accuses Knapton of improperly cherry picking subcategories within the Real Rate Report that have the lowest rates. (Pearl Decl. ¶ 31 (citing Knapton Decl. ¶¶19, 28, 32).)

Pearl, on the other hand, cites the results of billing surveys of California firms that bill at rates comparable to Bartlit Beck.  (Pearl Decl. ¶¶ 34-64.)  Given that Pearl's data points concern recent billing practices of California firms, this Court finds those more persuasive than Knapton's analysis.  Knapton also undercuts his position by arguing that this case should be billed as a standard fraud case, meaning that it does not justify billing in the top 25% of the fee ranges he references.  (Knapton Decl. ¶ 19.)  Labeling this case—which involves a time span of ten years and tens of millions of dollars in damages—as a standard fraud case and attempting to bill accordingly understates its complexity and disregards the expertise exhibited by the Zaks Defendants' attorneys. Bartlit Beck's attorney billing rates are in accord with comparable firms doing comparable work, and this Court is convinced that its attorneys who worked on this case have earned them.

### 3.  The Zaks Attorneys' Time Entries

In addition to challenging Bartlit Beck's billing rates, Knapton seeks to substantially reduce the Zaks Defendants' attorneys' fees by arguing that many individual entries were block billed, vague, duplicative, or excessive for the task at hand.  After reviewing the billing records at issue, the Court concludes that those records adequately describe the work and appear to be a trustworthy accounting of work legitimately performed.

Knapton opines that over $200,000 in fees were improperly block billed and applies an apparently arbitrary 30% reduction to those billing entries. (Knapton Decl. ¶¶ 84-94.) Exhibit 5B to Knapton's declaration contains a list of all fee entries Knapton deems to be block billed. (*Id.* ¶ 84.) After perusing the exhibit, the Court is left with the impression that Knapton's definition of block billing appears to include most time entries documenting multiple tasks, even in cases where the time spent on each task is documented in the entry. By way of example, Knapton apparently deems an entry for .4 hours with the following description to be block billing: "E-mail correspondence and telephone call with P Murphy re:damages estimate." (Knapton Decl. Ex 5B at 1.) Similarly, the following entry for 2 hours of time is block billing in Knapton's estimation: "Teleconference with team re reply briefs (1.00); email team re suggestions for reply briefs (.30); research issues relating to rescission and email J. Liang re same (.70)." (*Id.* at 2.) These entries are representative of the hundreds of entries Knapton considers to be improper. Because the Court finds them to be adequate, it will not apply the 30% discount Knapton proposes. Knapton's proposed 30% discount for the 205 pages of time entries he labels as "vague" will be denied for similar reasons. (*See* Knapton Decl. ¶¶ 79-83, Ex. 5C.)

Knapton also proposes a 40% deduction to entries that he deems to include "excessive time." (Knapton Decl. ¶¶ 73-78, Ex. 5E.) This would amount to a reduction of $178,899.70 to the Zaks Defendants' attorneys' fees. (*Id.* ¶ 77.) Mr. Knapton provides little analysis of why he believes these particular entries are excessive. The Court reviewed them and finds that a 40% reduction is not appropriate. In addition to this deduction for "excessive time," Knapton also proposes a deduction of $17,922.50 in fees for "duplicative work." (Knapton Decl. ¶¶ 70-72.) This includes entries where multiple attorneys reviewed a particular document or attended a deposition. (*Id.*) But as another court reviewing Knapton's fee analysis has noted, "[i]t is true that there is inherent duplication in any case staffed by more than one person . . . . But this fact of

litigation does not make such 'duplication' unreasonable or preclude an award of fees for this unavoidable aspect of having more than one timekeeper on a matter." *Housing Rights Ctr. v. Sterling*, No. CV 03-859 DSF, 2005 WL 3320738, at *6 (C.D. Cal. Nov. 1, 2005) (rejecting Knapton's proposed "whopping reduction" of 20% to adjust for duplication and noting that the number of timekeepers was necessitated by opposing counsel's "scorched earth litigation tactics"). There does not appear to be anything improper about the entries labeled "duplicative" in this case.

Knapton's declaration also provides a list of specific examples of "excessive" billing. (Knapton Decl. ¶¶ 34-47.) Several are bordering on frivolous. For example, Knapton takes issue with Bartlit Beck billing 12.0 hours for work described as "Attend Zaks deposition" when the deposition transcript indicates that the deposition itself only lasted 9.3 hours. (Knapton Decl. ¶ 35.) This incorrectly assumes that it is improper for an attorney to bill the client for travel to the deposition, waiting for the deposition to start, discussing the deposition with the client beforehand or afterwards, and other related activities. The Court finds that spending 2.7 hours on these deposition-related tasks is reasonable. Knapton similarly faults a Murphy Rosen attorney for billing 14 hours for "Travel to and attend deposition of C. Newman" when the deposition only lasted 6 hours. (*Id.* ¶ 38.) Even though the deposition was in San Francisco and Murphy Rosen is based in Santa Monica, Knapton concludes that the amount billed for travel was excessive. (*Id.*) The Court disagrees. Knapton also argues that various entries pertaining to work on the summary judgment motion were excessive. (*Id.* ¶¶ 39-44.) The Court finds that given the complexity of the issues, the volume of the filings, and the stakes of the litigation, these time expenditures were perfectly warranted. The Court also declines to accept Knapton's cursory arguments advocating for a discount of $10,622.50 for hourly fees he deems to be improper because they pertain to "administrative" work, (*Id.* ¶¶ 67-69), or his assertion that a $1,509.70 deduction is warranted because a handful of the Defendants' billing records were rounded off to whole numbers (e.g. 1.00 hours), which

he believes indicates that the attorney rounded up rather than down when estimating.  (*Id.* ¶¶ 92-95.)

Though this Court concludes that the vast majority of Knapton's proposed reductions are unwarranted, it is clear that Knapton correctly identified one major error in the Zaks Defendants' billing records: he noted that the billing entries that correspond to one Murphy Rosen invoice add up to 312.80 hours (a $130,750 fee) but the bill lists 473.50 hours (a $172,967.50 fee), a discrepancy of $42,217.50.  (Knapton Decl. ¶ 50.) Mr. Murphy has submitted a supplemental declaration acknowledging the error and asserting that he had intended to write off the time, but that due to an accounting mistake the cost of that time remained in the invoice's total even though the entries themselves had been deleted.  (Dkt. 403, Murphy Supp. Decl. ¶ 9.)  Mr. Murphy agrees that the $42,217.50 should be deducted from the total fees.  (*Id.* ¶ 8.)

This major billing discrepancy aside, Knapton provides little support for his substantial proposed fee reductions.  He is also silent about what is likely the most useful comparator to the Zaks Defendants' proposed fee award: the attorneys' fees State Fund itself paid to pursue this case.  Knapton would have added heft to his arguments by demonstrating that State Fund kept costs down by sending only a single attorney to each deposition, conducting only targeted discovery, or taking other steps to bring their case in a lean and efficient manner.  But the record is completely silent about State Fund's own expenditures on attorneys.  Given the breadth of discovery and State Fund's opposition to litigating the release in the Settlement Agreements before the underlying medical and billing fraud allegations, it is clear that frugality was not a core component of its litigation strategy.  It is therefore unsurprising that the Zaks Defendants deemed it necessary to adopt a similar posture.  Aside from the one major billing error, the Court concludes that the Zaks Defendants' attorney billing records are adequate to justify the fees sought here.

## C.  Non-Statutory Costs

In addition to incurring litigation costs that are recoverable separately in accordance with Federal Rule of Civil Procedure 54(d)(1), the Zaks Defendants incurred other out-of-pocket expenses in connection with the defense of this litigation.  They argue that compensation for expert and other costs is appropriate here, owing to State Fund's aggressive litigation strategy, which forced the Zaks Defendants to incur substantial expenses.  All told, the Zaks Defendants are seeking reimbursement in the sum of $1,149,772.56 in litigation costs other than those recoverable under Rule 54(d)(1).

In determining whether to award these costs, the Court turns first to the text of the contractual language in the Settlement Agreements, which provides that should either party bring a proceeding to enforce the terms of that agreement, "the prevailing party in such proceeding shall be entitled to its reasonable attorney's fees."  There is no mention that the prevailing party is also entitled to litigation costs.  This type of provision, which provides for fees but makes no mention of costs, has been held not to allow for recovery of  non-statutory costs, such as expert fees not ordered by the court, postage, and telephone and copying charges.  *See, e.g., Carwash of Am.-PO LLC v. Windswept Ventures No. 1, LLC*, 97 Cal. App. 4th 540, 544 (2002).  Based on the text of the Settlement Agreement, this Court concludes that the fee provision the Zaks Entities, as they put it, "expressly bargained for" does not include "costs."  (*See* Opening Br. at 4.) The distinction between attorneys' fees and costs is a common one, and is regularly discussed in caselaw.  *See, e.g., Hsu v. Semiconductor Sys., Inc.*, 126 Cal. App. 4th 1330, 1342 (2005) ("Nor may the disputed costs be awarded to plaintiff as an element of attorney fees under the rationale that the expenses were disbursed by the attorneys in the course of litigation.")

The Zaks Defendants find support for their position in one California case, *Bussey v. Affleck*, which found that a contract allowing attorneys' fees

> would be less than effectual if it could not cover the actual costs of litigation, including disbursements of counsel, and a contrary conclusion would mean that the party prevailing on the contract could never be made whole.

225 Cal. App. 3d 1162, 1166 (1990).  Subsequent decisions from the California Court of Appeal have, however, almost uniformly declined to follow *Bussey*.  *Hsu*, 126 Cal. App. 4th at 1330 ("We disavow this court's previous adoption of that view as an unwarranted conflation of fees and costs.") (citing *Bussey*, 225 Cal. App. 3d at 1162); *see also Ripley v. Pappadopoulos*, 23 Cal. App. 4th 1616, 1622 (1994) ("We agree that *Bussey* was wrongly decided . . . .").  And "[n]early every subsequent reported decision considering the issue has followed *Ripley* and rejected *Bussey*, concluding that 'contractual costs provisions are presumed to adopt the statutory definition contained in section 1033.5 absent evidence to the contrary.'"  *Cataphora Inc. v. Parker*, No. C09-5749 BZ, 2012 WL 174817, at *1 n.3 (N.D. Cal. Jan. 20, 2012) (collecting cases).

This Court concludes that the majority position on the issue is correct.  Fees and costs have long been treated as distinct categories and the parties negotiating the Settlement Agreements were experienced attorneys who were presumably well aware of that distinction.  The Zaks Defendants are entitled to the benefit of their bargain, nothing more.  Accordingly, the Court will not award the Zaks Defendants the $1,149,772 in non-statutory costs that they seek here.

//

//

//

### D.  Copying Costs

The Zaks Defendants believe they are entitled to recover copying costs beyond the scope of what this Court's Local Rules permit to be included on the Application to the Clerk to Tax Costs.  Central District Local Rule 54-3.10 allows the prevailing party to recover only a small subset of copying costs, including the cost of copies (1) "of documents necessarily filed and served," and (2) "admitted into evidence when the original is not available or the copy is substituted for the original at the request of an opposing party."  Local Rule 54-3.10(a), (b).  In addition, the prevailing party may recover "[f]ees for certification or exemplification of any document or record necessarily obtained for use in the case."  Local Rule 54-3.10(f).  According to the Zaks Defendants, this is an overly-restrictive interpretation of 28 U.S.C. § 1920(4), which provides that "[a] judge or clerk of any court of the United States may tax as costs the following . . . (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."

Under § 1920(4), the Zaks Defendants seek request $56,035.61 in "reimbursement of document copying costs for all materials necessarily obtained for use in the case, including the cost of converting documents to TIFFs."  (Opening Br. at 22.)  The Zaks Defendants represent that "[a]ll such copies were necessarily obtained for use in the case, and include, *inter alia*, copies of documents 1) produced in the case; 2) used or anticipated to be used as exhibits to depositions, pleadings, or briefs; 3) anticipated to be used in the upcoming trial; and 4) deposition transcripts."  (*Id.* at 22-23.)  For support that all of these costs are recoverable under § 1920(4), the Zaks Defendants cite *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 927 (9th Cir. 2015).  There, the Ninth Circuit concluded that a party may recover copying costs including paper copying costs and the cost of converting documents to TIFFs for production.  *Id.* at 927.  But the Circuit also noted that § 1920(4) is to be narrowly construed and requires a party to sufficiently

document such costs.  *Id.* at 928.  Specifically, the court noted indicated that "[t]he proper application of a narrowly construed § 1920(4) requires that the tasks and services for which an award of costs is being considered must be established with sufficient specificity, particularity, and clarity as to permit a determination that costs are awarded for making copies."  *Id.*

Here, the Court will exercise its discretion under § 1920(4) not to award the Zaks Defendants the copying costs they seek.  To justify the costs, they have provided the $56,035.61 total in a spreadsheet, (Zaks Ex. A), and have pointed the Court to declarations submitted by Murphy and Summers.  (Zaks Reply Br. at 15 (citing Murphy Supp. Decl. ¶¶ 52-53; Summers Supp. Decl. ¶ 38.)  These declarations in turn direct the court to line items scattered throughout dozens of pages of the firms' respective billing records that simply say "Duplicating" in the case of Bartlit Beck and "Copies" in the case of Murphy Rosen.  No consolidated itemization of the copying costs is provided.  The briefing and the cited portions of the declarations also contain no explanation of the cost of converting documents to TIFFS or further explanation of why that process was necessary.  The Court declines to award the Zaks Defendants well over $50,000 in copying costs, given the lack of clear documentation and explanation provided.

## E.  Reasonable Attorneys' Fees Incurred in Connection with this Motion

The Zaks Defendants are entitled to attorneys' fees and statutory costs incurred in connection with their motion for attorneys' fees.  *See, e.g., Signatures Network, Inc. v. Estefan*, No. C 03-4796 SBA (BZ), 2005 WL 151928, at *4 (N.D. Cal. Jan. 24, 2005).  They have requested permission to submit a supplemental declaration at the conclusion of all briefing and argument on this motion for additional attorneys' fees and costs incurred after March 31, 2016, and are hereby permitted to do so.

## III.  CONCLUSION

The Zaks Defendants' motion for attorneys' fees and non-statutory costs is GRANTED IN PART and DENIED IN PART.  The Zaks Defendants are hereby awarded $4,391,277.94 in attorneys' fees.  The Court will not, however, award the Zaks Defendants the $1,149,772.56 in assorted non-statutory costs or the $56,035.61 in copying costs that they also seek to recover here.


DATED:     July 6, 2016


_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE